# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

RANDY CRAWFORD                                                                         PLAINTIFF

V.                                         NO. 1:14CV00126-JTR

CAROLYN W. COLVIN,                                                                     DEFENDANT
Acting Commissioner,
Social Security Administration

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff, Randy Crawford ("Crawford"), has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have filed Appeal Briefs, *Docs. 11 & 12*, and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g).

On May 2, 2011, Crawford protectively filed applications for DIB and SSI, alleging disability since January 27, 2011. (Tr. 177-92, 219-20.) In his Disability Report-Adult, he stated that he was disabled because of degenerative disc disease. (Tr.

223.) After his claims were denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge ("ALJ").

On December 11, 2012, the ALJ conducted an administrative hearing. (Tr. 60-93.) After taking testimony from Crawford, the ALJ continued the hearing to send Crawford for a consultative examination. (Tr. 64-67, 92.) On June 24, 2013, the ALJ conducted a supplemental hearing, at which Crawford and a vocational expert ("VE") testified. (Tr. 26-59.) At the time of his alleged onset date, Crawford was thirty-six years old. (Tr. 19, 177.) He had completed high school and some vo-tech training. (Tr. 75.) He had past relevant work as a die cast operator and a trailer assembler. (Tr. 32-33, 50.)

In her August 16, 2013 decision, the ALJ found that Crawford: (1) had not engaged in substantial gainful activity since his alleged onset date; (2) had "severe" impairments consisting of degenerative disc disease, diabetes with neuropathy, and obesity; (3) did not have an impairment or combination of impairments meeting a Listing; (4) had the residual functional capacity ("RFC") to perform a modified range of sedentary work, precluding performance of his past relevant work; but (5) could perform other work existing in significant numbers in the national economy, with examples being a microfilm document preparer, telephone quote clerk, and charge account clerk. (Tr. 12-20.) Accordingly, the ALJ concluded that Crawford was not

disabled.

On September 11, 2014, the Appeals Council denied Crawford's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 1-5.) Crawford then filed his Complaint appealing that decision to this Court. *Doc. 2*.

In Crawford's Appeal Brief, he argues that the ALJ erred in rejecting the opinion of one of his treating physicians, Dr. Lester Burkow.[1]

For the reasons discussed below, the Court concludes that Crawford's argument has merit.

## II. Discussion

The ALJ found that Crawford had the RFC[2] to perform a restricted range of sedentary work and that, specifically, he: (1) could frequently and occasionally lift/carry up to ten pounds; (2) could stand and/or walk for two hours of an eight-hour workday; (3) could sit for six hours of an eight-hour workday; (4) must avoid ladders,

---

[1] Generally, a treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012). An ALJ must "always give good reasons" for the weight he gives to the opinions of a claimant's treating sources. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[2] RFC is defined as "the most [the claimant] can still do" in a work setting "on a regular and continuing basis" despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c). "[B]ecause RFC is a medical question, *some medical evidence* must support" that determination. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (emphasis added).

ropes and scaffolds; (5) could occasionally climb ramps and stairs; and (6) could occasionally balance, stoop, kneel, crouch and crawl. (Tr. 15.) *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (defining sedentary work).

Importantly, to perform sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday, *with breaks at two-hour intervals*. SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996). Here, the ALJ made no finding regarding the length of time Crawford could sit at one time before needing a break or needing to change position. Thus, his finding that Crawford could perform sedentary work necessarily entails the ability to sit, without interruption, for two hours at a time.

In assessing Crawford's RFC, the ALJ stated that he was affording "some weight" to the opinions of Dr. Burkow, a family care practitioner. (Tr. 18.)

Between June 2012 and September 2013, Dr. Burkow treated Crawford eight times for several conditions, including chronic back, hip and leg pain. (Tr. 442-63, 465-88, 516-35, 627-59.) On December 20, 2012, Dr. Burkow completed a Medical Source Statement-Physical ("MSS"), concluding that, from June 2012 forward, Crawford: (1) could frequently and occasionally lift and/or carry up to ten pounds; (2) could stand for only fifteen minutes; (3) could walk for only thirty minutes; (4) could sit for only ten minutes; (5) had no limitations in pushing/pulling; (6) could never

climb, stoop, kneel, crouch or bend; (7) could only occasionally balance; and (8) could occasionally reach and handle as long as no "excess strength" was required. (Tr. 538-39.) Dr. Burkow stated that his opinions were based on discussions with Crawford, their office visits, review of the radiologic tests, and review of Crawford's emergency-room visits.

In his decision, the ALJ stated that his RFC assessment, for a restricted range of sedentary work, was "congruent with" Dr. Burkow's opinion regarding lifting/carrying. (Tr. 18.) The ALJ then stated:

> However, the undersigned notes that Dr. Burkow's records do not support limitations of standing for only 15 minutes at a time, walking for 30 minutes, and *sitting for 10 minutes at a time*; therefore, those specific limitations opined by Dr. Burkow are granted no evidentiary weight.

(Tr. 18) (emphasis added).

The ALJ did not identify any specific inconsistencies between Dr. Burkow's treatment records and his opinion that Crawford could sit for only ten minutes at a time. Furthermore, other medical evidence in the record, most of which Dr. Burkow reviewed, is *consistent* with Crawford not being able to continuously remain in a seated position for two-hour intervals of time. Diagnostic tests clearly showed chronic degenerative disc disease at multiple levels of Crawford's spine, along with bulging

and herniation of several discs.[3] Between February 2011 and December 2012, Crawford went to the ER on six occasions, complaining of lower back pain.[4] On December 3, 2012 – less than three weeks before Dr. Burkow completed his MSS – Crawford went to the ER with recurrent, moderate stabbing and shooting lower back pain, right hip pain, and muscle spasms, aggravated by bending, twisting and "certain positions." (Tr. 583-84.) The physician's discharge instructions were: "*No long sits*; no twist; move 1-2 hr; ice 20-30; massage; lose weight." (Tr. 599) (emphasis added).

In addition, a consultative examiner's opinion, to which the ALJ afforded "some weight," concluded that Crawford could sit for *only one hour* "at one time without interruption." (Tr. 542.)

At the administrative hearing, Crawford testified that he could sit for "no more than thirty minutes max" at one time and that sitting in an upright position was "very hard to do." (Tr. 44.) He said that, even after fifteen minutes, his back would start "giving [him] problems." (Tr. 88.) During the hearing, the ALJ noted that Crawford

---

[3]On March 7, 2011, an MRI revealed that Crawford had: (1) chronic degenerative disc desiccation and disc bulging at levels L2-S1; (2) borderline central spinal stenosis at L3-L4; (3) mild degenerative posterior facet joint effusions at levels L2-L4; and (4) overall minimal interval change since March 30, 2006, except for questionable mild increase in disc bulging at L3-L4. (Tr. 335-36.) On January 22, 2012, a CT of the lumbar spine showed: (1) a diffuse anular bulge at L2-3/3-4; (2) central left paracentral herniation with calcified fragments flattening the anterior central and left paracentral thecal surfaces; and (3) no nerve root impingement. (Tr. 401-04.)

[4]*See* Tr. 337-42 [02/07/11]; 397-404 [01/22/12]; 465-66 [07/05/12]; 490-515 [08/07/12]; 604-25 [10/28/12]; 581-603 [12/03/12].

was "kind of laying on the arms of the chair." Crawford testified that he had to sit that way to take pressure off his back and hips. (Tr. 44.) Crawford also testified that, during the day, he usually had to lay down on the couch or the floor, sometimes with his legs up, and had to alternate laying on the couch with walking around. (Tr. 78-79.) He testified that he could drive, but "not [for a] very long period of time" before experiencing back pain. He said that, after about fifteen minutes, he would need to "adjust to where [he] can relax [his] back" and sometimes had to stop and get out of the car. (Tr. 76-77.) In his Function Report-Adult, Crawford stated that he had difficulties with sitting and that, if he sits upright too long, his "feet go numb and [his] lower back hurts so [he has] to go lay down." (Tr. 244-45.)

As a whole, this record does not support the ALJ's conclusion that Crawford is able to sit continuously for two hours at a time.

Crawford also correctly argues that the ALJ *never addressed* Dr. Burkow's opinion that Crawford was limited in reaching and handling, much less articulated "good reasons" for rejecting that opinion. Crawford testified that he had problems with numbness in his hands, causing him to lose his grip and drop things. (Tr. 45, 90.) In his Function Report, he indicated that he had difficulties with "reaching." (Tr. 245.)

Similarly, the ALJ *never addressed* Dr. Burkow's opinion that Crawford could never climb, stoop, kneel, crouch and bend, all of which are inconsistent with the

ALJ's RFC assessment.

These omissions are significant because, when asked to consider an hypothetical individual with the limitations imposed by Dr. Burkow, the VE responded that there would be "no" jobs that such an individual could perform. The VE explained that work would be precluded because: (1) a worker would be taken "off task" by changing positions more than four times an hour, which would be required if he were limited to sitting only ten minutes at a time; and (2) a limitation to only occasional handling with the dominant hand would eliminate all work at the sedentary, unskilled level. (Tr. 57-58.) .

Under these circumstances, the evidence relied upon by the ALJ falls far short of the required medical evidence necessary to support his RFC determination. This case must be remanded so that the ALJ can identify or, if necessary, obtain specific medical evidence from a treating or examining physician to support his conclusion that Crawford can sit continuously for two hours at a time. The ALJ must update the medical records with any additional treatment or diagnostic results. The ALJ must then re-evaluate the entire record, reformulate his RFC assessment, and proceed through the sequential evaluation. If the ALJ rejects any of Dr. Burkow's specific findings, he must explain his reasons for doing so as to each finding that he rejects.

### III. Conclusion

IT IS THEREFORE ORDERED that the Commissioner's decision is REVERSED and this matter is REMANDED for further proceedings consistent with this opinion. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 1st day of March, 2016.

_____
UNITED STATES MAGISTRATE JUDGE